IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| MINNESOTA LIFE INSURANCE COMPANY,<br><br>    Interpleader Plaintiff,<br><br>vs.<br><br>ANDREA CARADINE, MARINA CARADINE, JaLEESA CARADINE, JaMEESHA HAWTHORNE, LaDARIUS CARADINE, PAULA WATTS (a/k/a Paula Brown), individually and as parent and guardian of JW, JW, a minor, JAS WATTS, NAOMI SISK, DARRELL REASBY, and BRIAN CARADINE,<br><br>    Interpleader Defendants. | No. C13-2068<br><br>REPORT AND RECOMMENDATION |

On the 20th day of August 2014, this matter came on for an evidentiary hearing to determine the appropriate disposition of proceeds from a group term life insurance policy insuring the life of James A. Caradine. Defendants Andrea Caradine, Marina Caradine, JaLeesa Caradine, and JaMeesha Hawthorne appeared personally, and were unrepresented by counsel. The remaining Defendants did not appear, nor anyone for them.

## I. PROCEDURAL HISTORY

On September 20, 2013, Minnesota Life Insurance Company ("Minnesota Life") filed a Complaint for Interpleader. According to the Complaint, Minnesota Life issued a group term life insurance policy to Deere & Company, which insured the life of James A. Caradine. Minnesota Life asked that it be permitted to deposit with the Court the remaining life insurance proceeds, with the Court then determining the appropriate disposition of the proceeds among the various claimants.

On June 27, 2014, Judge Edward J. McManus filed an Order directing Minnesota Life to pay over to the Clerk of Court the net proceeds of the life insurance policy. Judge McManus also referred the matter to me for a report and recommendation on the question of whether the most recent Beneficiary Designation is valid.

## II. RELEVANT FACTS

### A. *James Caradine Family*

James Caradine was not married at the time of his death. He was previously married to Andrea Caradine for approximately 31 years, but they were divorced in 1998. Andrea Caradine, age 71, testified that she and James had two children, Marina Caradine and Brian Caradine. Brian Caradine resides in California. Marina Caradine, age 45, testified that she has three children, JaLeesa Caradine, JaMeesha Hawthorne, and LaDarius Caradine. JaLeesa, age 26, and JaMeesha, age 22, also appeared at the hearing. LaDarius is incarcerated at the Anamosa State Penitentiary.

James Caradine was also married at one point to Naomi Sisk. Andrea Caradine testified that James and Naomi were married for only a short period of time in approximately 2000. No children were born to that marriage. Naomi Sisk lives in Waterloo.

Defendant Paula Brown, formerly known as Paula Watts, is apparently James' daughter from an earlier relationship.[1] Paula has two children, Jasalynn ("Jas") and James ("JW"). Paula Brown and her two children reside in California.

The other named Defendant is Darrell Reasby. Darrell Reasby is Andrea Caradine's son by a previous marriage. That is, Darrell Reasby is not biologically related to James Caradine; although according to Andrea, James raised Darrell as his own son. Darrell Reasby resides in California.

---

[1] Andrea Caradine doubts that Paula is James' biological daughter, but that issue is not relevant to this proceeding.

2

## B. *James Caradine's Last Illness*

James A. Caradine died on June 27, 2013, at the age of 74. According to the death certificate, Caradine suffered from lung cancer, chronic obstructive pulmonary disease, and chronic heart failure. His immediate cause of death was described as "respiratory failure."

According to the medical records which were introduced as exhibits at the time of hearing, Caradine was diagnosed with lung cancer in 2002. He was seen regularly in 2012 and, given the nature of his illness, was "doing remarkably well." He was hospitalized for short periods of time in 2012, but generally recovered quickly. It was decided that he would follow a course of chemotherapy. While Caradine's prognosis was poor, there is nothing in the medical records to suggest that he was not mentally alert.

According to a progress note by Dr. Robert L. Friedman, dated December 12, 2012, "[a] few weeks ago James looked like he was going to die, he had respiratory failure but responded quite well to a CPAP and BIPAP in the hospital and came through this and is feeling better. He is pretty much back to normal but still needs the BIPAP at times and is on oxygen." According to Andrea, Caradine lived independently in his own apartment, although her family provided daily assistance.

On June 14, 2013, Caradine was discharged from Covenant Medical Center after being admitted for respiratory failure. However, Caradine returned to the emergency room on June 18, 2013. After stabilizing in the ICU, he was moved to the medical floor. His condition continued to deteriorate and he had BIPAP on-and-off. On June 26, Caradine was moderately hypoxic and had more BIPAP, but stabilized. According to a hospital report following his death, he "looked well on 6/27/2013." In mid-afternoon, however, he became unresponsive and, following efforts to revive him, was pronounced dead.

Dr. Mukund Nadipuram, one of Caradine's treating physicians, signed a letter on July 29, 2013, addressed "To Whom It May Concern," stating "[i]t is my medical opinion that James Caradine was fully competent to make [his] own decisions financially and medically up until the end of life." *See* Defendants' Exhibit C.

## C. Life Insurance

James Caradine was a long-time employee of Deere & Company in Waterloo. Minnesota Life issued a group term life insurance policy to Deere & Company, which insured the life of James Caradine. The amount of life insurance benefits payable under the policy upon Caradine's death was $65,059.64, plus interest. However, Minnesota Life paid for funeral expenses under a funeral home assignment, so the remaining balance was $52,702.89, plus interest. In his Order of June 27, 2014, Judge McManus approved attorney fees and costs to Minnesota Life in the amount of $3,891.60. Accordingly, the amount remaining for distribution to the beneficiaries is $48,811.29, plus accrued interest. (I note parenthetically that Minnesota Life deposited $49,490.80 with the Clerk of Court on July 10, 2014.)

In a "Beneficiary Designation and Change Request" signed on June 23, 2013 — just four days prior to his death — James designated Andrea to receive 40% of the insurance proceeds, with Marina, JaLeesa, JaMeesha, and LaDarius each receiving 15%. In its complaint, Minnesota Life states that the prior Beneficiary Designation in the file, which was dated December 17, 2012, designated Andrea to receive 30% of the insurance proceeds, with Marina, JaLeesa, JaMeesha, and LaDarius each receiving 10%. The remaining 30% went to Paula, Jas, and JW in equal shares (*i.e.*, 10% each). It should be noted that the December 17, 2012 Beneficiary Designation is not contained in the file.

On about July 15, 2013, Andrea, Marina, JaLeesa, JaMeesha, and LaDarius submitted claim forms to Minnesota Life. At about the same time, Minnesota Life received a letter from Paula, contesting the June 23, 2013 Beneficiary Designation. Paula claimed that James Caradine was not physically or mentally competent to execute the

4

Beneficiary Designation on June 23, 2013. Attached to Paula's letter was a Beneficiary Form signed by James Caradine on March 8, 2010. (Apparently, Paula was unaware of the Beneficiary Designation signed by James on December 17, 2012.) In 2010, Caradine designated Naomi Sisk to receive 40% of the insurance proceeds, 10% to Darrell Reasby, 25% to Brian Caradine, and 25% to Paula Watts (n/k/a Paula Brown).

By my calculation, the distribution of the net proceeds may be estimated under each of the Beneficiary Designation forms as follows:[2]

|  | **June 23, 2013** | **December 17, 2012** | **March 8, 2010** |
|---|---|---|---|
| Andrea Caradine | 19,524.53 | 14,643.38 |  |
| Marina Caradine | 7,321.69 | 4,881.13 |  |
| JaLessa Caradine | 7,321.69 | 4,881.13 |  |
| JaMeesha Hawthorne | 7,321.69 | 4,881.13 |  |
| LaDarius Caradine | 7,321.69 | 4,881.13 |  |
| Paula Watts (Brown) |  | 4,881.13 | 12,202.82 |
| JW Watts |  | 4,881.13 |  |
| Jas Watts |  | 4,881.13 |  |
| Naomi Sisk |  |  | 19,524.52 |
| Darrell Reasby |  |  | 4,881.13 |
| Brian Caradine |  |  | 12,202.82 |
|  |  |  |  |
| TOTAL | 48,811.29 | 48,811.29 | 48,811.29 |

---

[2] It should be noted that these are *estimates only*. The actual amounts will be affected by interest or other factors.

5

Andrea Caradine denied that she tried to persuade James to change his Beneficiary Designation. According to Marina Caradine, James brought it up during his last hospitalization. Marina testified that James asked her to go to his apartment and retrieve papers from Minnesota Life from his headboard. According to Marina, she went to the apartment, "looked exactly where he told me," and brought an envelope back to the hospital. Marina testified that James said "just listen to what I'm telling you and do what I say." James then listed the beneficiaries and the percentages. Marina filled out the Beneficiary Designation form, and James then signed it.

## III. DISCUSSION

If an ERISA plan grants its administrator discretion to decide questions of eligibility for benefits or construe plans, then judicial review of the administrator's determinations generally are limited to the abuse of discretion standard. *Alliant Techsystems, Inc. v. Marks*, 465 F.3d 864, 868 (8th Cir. 2006). Judicial review is *de novo*, however, "for issues that were within the administrator's discretion but on which the administrator failed to render a decision." *Id. See also Trustees of Electricians' Salary Deferral Plan v. Wright*, 588 F.3d 922, 926 (8th Cir. 2012) ("The district court should apply a *de novo* standard of review, rather than an abuse of discretion standard, when the 'administrator did not exercise the discretion granted to it.'"). Here, Minnesota Life made no determination regarding the disposition of the insurance proceeds, electing instead to deposit the funds with the Court. Accordingly, the Court reviews this matter *de novo* to determine the appropriate disposition of the insurance proceeds.

On July 15, 2013, Paula Brown sent a letter to the insurance company "contesting the current designated beneficiary" of Caradine's life insurance policy.[3] According to Ms. Brown, "relatives of mine" told her that during Caradine's last hospitalization "he talked to them as if they were his sisters and brothers that had died years before him nor

---

[3] A copy of the letter is attached to the complaint as Exhibit D.

6

did he make any sense once he awoke from the coma." In her letter, Ms. Brown reports that she "did speak briefly with my father on 6/25/2013 over the phone he told me he was very weak." The letter also states:

> He mentioned the doctors wanted him to get up and walk but he didn't have any energy. I then told him take his time and try to walk when he felt better. We exchanged "I love you" and I told him I would let him go so he could get some rest.

Letter "To Whom It May Concern" from Paula Brown, dated July 15, 2013. It would appear that Ms. Brown argues Caradine lacked testamentary capacity to change the beneficiaries of his life insurance policy and was subject to undue influence.

Generally, testamentary capacity requires a person to know and understand "(1) the nature of the instrument being executed; (2) the nature and extent of his property; (3) the natural objects of his bounty; and (4) the disposition he desired to make under his last will and testament." *Matkovich v. Matkovich*, 836 N.W.2d 152 (Table), 2013 WL 2637245 (Iowa App.) (quoting *In re Estate of Lachmich*, 541 N.W.2d 543, 545 (Iowa App. 1995)). As the person challenging Caradine's testamentary capacity, Paula Brown has the burden of proving that, at the time he signed the June 23 Beneficiary Designation, Caradine did not know and understand at least one of the four elements necessary to establish testamentary capacity. *Jackson v. Schrader*, 2002 WL 1428147, *4 (Iowa App.).

Paula Brown did not appear at the time of hearing and has not presented any admissible evidence to support her claim that Caradine lacked testamentary capacity. Indeed, according to her July 15 letter, when she spoke with her father on June 25 (*after* the Beneficiary Designation was signed), he knew who she was and was able to carry on a conversation with her. At the time of hearing, Andrea, Marina, JaLeesa, and JaMeesha all testified that they spoke with James on the day prior to his death and he was alert and responsive. Dr. Mukund Nadipuram, one of Caradine's treating physicians, signed a letter on July 29, 2013, stating "[i]t is my medical opinion that James Caradine was fully competent to make [his] own decisions financially and medically up until the end of life."

7

I conclude that Paula has failed to prove that Caradine lacked testamentary capacity when he executed the Beneficiary Designation on June 23, 2013.

I next address Paula Brown's claim that Caradine was subject to undue influence when he changed the percentages on his Beneficiary Designation shortly before he died. "'Undue influence' is persuasion that overpowers the will of the grantor and prevents the grantor from acting intelligently, understandingly, and voluntarily." *In re Estate of Dilley*, 803 N.W.2d 672 (Table), 2011 WL 2695757, *1 (Iowa App.). To successfully assert a claim of undue influence, Paula Brown must prove: (1) James was susceptible to undue influence, (2) the other claimants had an opportunity to exercise undue influence and effect the wrongful purpose, (3) the other claimants had a disposition to influence unduly to procure an improper favor, and (4) the change in beneficiary percentages was clearly the effect of undue influence. *Id.* Those seeking to set aside a beneficiary designation based on undue influence carry the burden of proving the essential elements by a preponderance of the evidence. *Matkovich*, 2013 WL 2637245 at *2. "Mere suspicion, surmise, conjecture, or speculation is not enough to warrant a finding of undue influence, but there must be *a solid foundation of established facts upon which to rest an inference of its existence.*" *Id.* (italics in original)

Again, Paula Brown has failed to meet her burden of proof in this regard. While Andrea Caradine and her family regularly visited James in and out of the hospital, and therefore had the "opportunity" to exercise undue influence, Ms. Brown has failed to offer any admissible evidence that they did so. The Court notes that even before the latest Beneficiary Designation on June 23, Andrea and her family were the primary beneficiaries of the life insurance policy. That is, the December 17, 2012 Beneficiary Designation left 70% to Andrea and her family, with the remaining 30% to Paula and her family. While the June 23 Beneficiary Designation upped the percentages to Andrea and her family and eliminated the designation to Paula and her family, there is no evidence that James didn't simply change his mind. According to Andrea and Marina, no one raised the issue with

8

James during his last hospitalization. Rather, according to Marina, James simply asked her to retrieve the necessary documents from his home so that he could make the change. I conclude that Paula Brown has failed to meet her burden of proving that the change on June 23, 2013 was the product of undue influence.

In his order of June 27, 2014, Judge McManus referred the matter to me "on the question whether the June 23, 2013, Beneficiary Designation was valid." I conclude that it was a valid beneficiary designation. The challengers to the Beneficiary Designation have failed to meet their burden of proving that James Caradine lacked testamentary capacity when he executed the Beneficiary Designation, and they have failed to prove that it was the product of undue influence. Accordingly, I believe the Court should order disposition of the insurance proceeds pursuant to the June 23, 2013, Beneficiary Designation.

## IV. RECOMMENDATION

For the reasons set forth above, it is respectfully **RECOMMENDED** that the Court find the June 23, 2013 Beneficiary Designation was valid. Accordingly, I recommend that the Court direct the Clerk of Court to distribute the remaining life insurance proceeds in a manner consistent with the June 23, 2013, Beneficiary Designation. Specifically, 40% should be paid to Andrea Caradine, with Marina Caradine, JaLeesa Caradine, JaMeesha Hawthorne, and LaDarius Caradine each receiving 15%.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report*

*and Recommendation, they must promptly order a transcript of the hearing held on August 20, 2014.*

DATED this 2nd day of September, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA